**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT

8      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   GLENN DUNN,                              No. C 04-5479 CW

11        Petitioner,                   ORDER DENYING
                                        PETITION FOR WRIT
12      v.                              OF HABEAS CORPUS

13   CHERYL PLILER, Warden,

14        Respondent.

15   _____/

16

17                    INTRODUCTION

18      Petitioner Glenn Allen Dunn, a state prisoner who is

19   incarcerated at Pelican Bay State Prison, filed this petition for a

20   writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the

21   validity of his conviction in California state court.  Having

22   considered the papers filed by the parties, the Court DENIES the

23   petition for a writ of habeas corpus.

24                   PROCEDURAL HISTORY

25      On August 2, 1995, an information was filed in Contra Costa

26   County charging Petitioner with three counts of robbery, and

27   alleging that Petitioner had suffered two prior serious felony

28   convictions and served two prior prison terms.  Clerk's Transcript

United States District Court
For the Northern District of California

(CT) 79.  Represented by the Public Defender's Office, Petitioner plead not guilty to the charges and denied the allegations on August 3, 1995.  CT 82.

On November 17, 1995, the trial court deemed Petitioner mentally incompetent to stand trial and suspended the criminal proceedings.  CT 109.  The trial court committed Petitioner to Atascadero State Hospital and ordered him to remain hospitalized until restored to competence to stand trial.  CT 109.

Criminal proceedings were reinstated on May 21, 1996.  CT 118. On June 27, 1996, Petitioner was permitted to enter the additional plea of not guilty by reason of insanity.  CT 120.  Jury trial began on November 12, 1996.  CT 190.

On November 21, 1996, the jury convicted Petitioner of the three 1995 bank robberies.  CT 407.  In a bifurcated proceeding, the jury found that Petitioner was legally sane when he committed the robberies.  CT 411.  In a subsequent bench trial, the court found true the allegations that Petitioner had suffered two prior serious felony "strike" convictions and had served two prior prison terms.  CT 493.

The trial court sentenced Petitioner to a term of eighty-seven years to life in prison.  CT 517-19.  On direct review in an unpublished decision, the Court of Appeal ordered that a one-year enhancement for a prior prison term be stricken.  People v. Dunn, No. A078114 slip op. at 9 (Cal. Ct. App. March 30, 1999).  In all other respects, the Court of Appeal affirmed Petitioner's conviction.  Id.  On June 3, 1999, the California Supreme Court denied his petition for review.  Answer Ex. N.

1    Petitioner filed a state habeas petition in the Superior Court

2 for Contra Costa County, which denied the petition on May 20, 2003.

3 Answer Ex. P.  Petitioner was denied relief on his subsequent state

4 habeas petitions in the Court of Appeal and California Supreme

5 Court.  Petition 5-7.

6    On December 28, 2004, Petitioner filed this petition for a

7 federal writ of habeas corpus, presenting thirty-three grounds for

8 relief.  The Court denied Respondent's motion to dismiss the

9 petition as untimely, and granted Petitioner's request for

10 appointment of counsel.  With leave of Court, Petitioner's counsel

11 filed a Supplemental Memorandum of Points and Authorities in

12 support of his habeas petition.  Respondent filed an answer and

13 Petitioner filed a traverse.

14                        STATEMENT OF FACTS

15    In its written opinion on direct review, the California Court

16 of Appeal summarized the factual background as follows:

17        On the morning of March 13, 1995, appellant entered the
         Bank of America branch in Pittsburg and handed a note
18        to a teller, Theresa Baledge.  The note said: "'This is
         a robber[y].  Give me the money in your drawer.'"
19        Initially, Baledge believed appellant was kidding and,
         thus, did not immediately respond.  Appellant then
20        stuck his hand in his jacket and told Baledge to hurry
         up because he did not want to hurt her.  She handed
21        over $5,775 to appellant and activated the bank's
         security cameras.  The jury was shown a photo made from
22        the security tape.

23        On the morning of March 15, 1995, appellant entered the
         Citibank branch in Antioch.  He went to a customer
24        service center, where he was approached by a teller,
         Tracy St. John.  After an initial exchange, appellant
25        followed St. John to her window where he told her,
         "'This is a robbery.  Give me your cash, and I have a
26        gun.'"  St. John gave him money from her drawer.
         Appellant was again identified by security cameras.
27        St. John also identified him from a photo lineup and in
         court.

28

                                   3

Appellant's third robbery took place on the afternoon of April 1, 1995. Appellant entered a Great Western branch in Antioch and approached Karen Brown, a teller. Again, he presented a note: "'This is a robbery, and I have a gun.'" Brown replied: "'You have to be kidding.'" Appellant was not and told her so, along with informing her he had a gun. Brown gave appellant several stacks of bills, totaling approximately $1,600.

Appellant's defense consisted entirely of testimony from a forensic psychologist, Dr. Edward Hyman, who opined that appellant did not have the required mental state to commit robbery on the three occasions in question. Dr. Hyman's testimony was rebutted by Dr. Jules Bernstein, a forensic psychologist called by the prosecution.

Answer Ex. M at 2 (brackets in original).

STANDARD OF REVIEW

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

United States District Court
For the Northern District of California

1   principle from [the Supreme] Court's decisions but unreasonably

2   applies that principle to the facts of the prisoner's case." Id.

3   at 413.   The only definitive source of clearly established federal

4   law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme

5   Court as of the time of the relevant state court decision. Id. at

6   412.

7       In determining whether the state court's decision is contrary

8   to, or involved an unreasonable application of, clearly established

9   federal law, a federal court looks to the decision of the highest

10  state court to address the merits of a petitioner's claim in a

11  reasoned decision.   LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th

12  Cir. 2000).   Where, as here, the highest state court to reach the

13  merits issued a summary opinion which does not explain the

14  rationale of its decision, federal court review under § 2254(d) is

15  of the last state court opinion to reach the merits. Bains v.

16  Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir.), cert. denied, 531

17  U.S. 1037 (2000).   Where the state court gives no reasoned

18  explanation of its decision on a petitioner's federal claim and

19  there is no reasoned lower court decision on the claim, a federal

20  court conducts "an independent review of the record" to determine

21  whether the state court's decision was an unreasonable application

22  of clearly established federal law.   See Plascencia v. Alameida,

23  467 F.3d 1190, 1198 (9th Cir. 2006); Himes v. Thompson, 336 F.3d

24  848, 853 (9th Cir. 2003).

25      If constitutional error is found, habeas relief is warranted

26  only if the error had a "'substantial and injurious effect or

27  influence in determining the jury's verdict.'" Penry v. Johnson,

28

5

1   532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S.

2   619, 638 (1993)).

3                            DISCUSSION

4   I.   Ineffective Assistance of Trial Counsel

5      Petitioner raises several grounds for habeas relief based on

6   the performance of his defense counsel at trial.  In denying habeas

7   relief on his claims for ineffective assistance of counsel, the

8   Superior Court reasoned as follows:

> A claim of ineffective assistance of counsel requires a
> showing both of deficient performance by the attorney
> and proof of resulting prejudice.  The existence of
> prejudice is to be decided on the basis of the totality
> of the evidence before the judge or jury.  Here,
> petitioner has not filed or lodged a record sufficient
> to aid the court in its review of the claim.  All the
> IAC claims relating to the trial attorney therefore
> fail.  (See <u>Sherwood v Superior Court</u> (1979) 24 Cal.3d
> 183, 186 (writ petitioner must file a record adequate
> for review).)

<u>In re Glenn Allen Dunn on Habeas Corpus</u>, No. 030731-4, slip op. at
4 (Contra Costa Super. Ct. May 20, 2003).

      A.   Applicable Federal Law

      A claim of ineffective assistance of counsel is cognizable as
a claim of denial of the Sixth Amendment right to counsel, which
guarantees not only assistance, but effective assistance, of
counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The
benchmark for judging any claim of ineffectiveness must be whether
counsel's conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied upon as having
produced a just result.  <u>Id.</u>

      In order to prevail on a Sixth Amendment ineffectiveness of
counsel claim, a petitioner must establish two things.  First, he
must establish that counsel's performance was deficient, that is,

**United States District Court**
For the Northern District of California

it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.  Because trial counsel's competence is presumed, the petitioner must rebut this presumption by demonstrating that counsel's performance was unreasonable under prevailing professional norms and was not the product of sound strategy.  See id. at 688-89.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered as the result of the alleged deficiencies.  Id. at 697; Williams (Keith) v. Calderon, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995), cert. denied, 516 U.S. 1124 (1996).

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams (Terry), 529 U.S. at 404-08.

United States District Court
For the Northern District of California

B.   Failure to Confer

In Claim 11, Petitioner contends that his attorney testified at trial without formally consulting with Petitioner or obtaining his written consent, thereby diminishing counsel's role as an advocate by acting as a witness and jeopardizing the attorney-client privilege.  The record indicates, however, that the trial court took steps to assure itself of Petitioner's consent, and received an offer of proof on the subject of defense counsel's testimony.  Subsequently, the parties agreed on the scope of argument concerning the subject of counsel's testimony, and the trial court instructed the jury to disregard the testimony.

1.   Applicable Federal Law

An attorney has a duty to consult with his client regarding "important decisions," including questions of overarching defense strategy.  <u>Strickland</u>, 466 U.S. at 688.  That obligation does not require counsel to obtain the defendant's consent to "every tactical decision," however.  <u>Taylor v. Illinois</u>, 484 U.S. 400, 417-18 (1988).

2.   Analysis

In the absence of a reasoned state court decision on the denial of habeas relief on this claim, an independent review of the record is necessary to determine whether the state court's decision was an unreasonable application of the <u>Strickland</u> standard. <u>Plascencia</u>, 467 F.3d at 1198.

Although Petitioner did not state on the record that he consented to having defense counsel testify, it is clear from the record that the trial court inquired whether Petitioner objected to his attorney's appearance as a witness, that defense counsel

8

responded that he had not "formally consulted with him," that the
trial court excused the jury for a brief recess to discuss the
matter, and that defense counsel proceeded to testify when the
trial resumed.  Reporter's Transcript of trial (RT) at 684-85.
Furthermore, the trial court recorded in its minutes that "Public
Defender . . . is sworn and testifies with his client's
permission."  CT 196.  It is thus reasonable to infer that after
raising the question of Petitioner's consent, the trial court was
satisfied that Petitioner consented to having defense counsel
testify before calling him to the witness stand.

The trial court gave both defense attorneys "as well as Mr.
Dunn" an opportunity to evaluate whether to offer defense counsel's
testimony at trial, and ordered the parties to discuss stipulating
on the scope of argument.  RT 700, 703.  The trial court
subsequently instructed the jury to disregard defense counsel's
brief testimony "as not evidence in this case at this point and it
should not be considered for any purpose."  RT 712.

Petitioner cites no authority that counsel's failure to
consult with the defendant before testifying constitutes
ineffective assistance of counsel.  Petitioner cites the California
Rules of Professional Conduct, which were in effect at the time of
Petitioner's trial, which provide that an attorney may not act as
an advocate before a jury that will hear his testimony without the
"informed written consent of the client."  Cal. Rule of Prof.
Conduct 5-210.  The rules governing members of the state bar are
not, however, controlling on habeas review, which is governed by
the Strickland standard.  While defense counsel is obliged to
explain his proposed trial strategy, he is not required to obtain

affirmative, explicit consent.  <u>Florida v. Nixon</u>, 543 U.S. 175, 189 (2004).

Even if an attorney's failure to consult with a criminal defendant before testifying would be unreasonable under prevailing professional norms, the record suggests that the trial court was assured that defense counsel consulted with Petitioner to obtain his consent before testifying.  RT 684-85; CT 196.  Thus, defense counsel's performance was not deficient in failing to confer with Petitioner about his testimony.  Furthermore, Petitioner was not prejudiced by defense counsel's testimony in that the jury was instructed to disregard his testimony.  The petition for writ of habeas corpus is therefore denied as to Claim 11.

C.   Claims Based on Failure to Investigate

Petitioner further alleges that trial counsel failed adequately and timely to investigate and prepare for both the guilt and sanity phases of his trial, in the following claims: Claim 12 (failure to retain expert witness on mental health in timely manner); Claim 16 (failure to call treating physician to testify about Petitioner's mental health); Claims 9 and 19 (failure to prepare for suppression hearing and failure to introduce evidence of Petitioner's mental illness at the time of in-custody interrogation); and Claims 1 and 21 (failure to call witnesses).

1.   Applicable Federal Law

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  <u>See</u> <u>Strickland</u>, 466 U.S. at 691; <u>Turner v. Duncan</u>, 158 F.3d 449, 456 (9th Cir. 1998). Counsel's negligence in conducting pretrial investigation may

10

support a claim of ineffective assistance.  <u>See</u> <u>United States v. Tucker</u>, 716 F.2d 576, 582-84 (9th Cir. 1983).  Counsel must, at a minimum, conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent his or her client.  <u>See</u> <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1457 (9th Cir. 1994) (failure to investigate leading to uninformed decision not to call witness who had admitted to committing crime not a strategic decision).

        2.   Analysis

In the absence of a reasoned state court decision on the denial of habeas relief on this claim, an independent review of the record is necessary to determine whether the state court's decision was an unreasonable application of the <u>Strickland</u> standard.  <u>Plascencia</u>, 467 F.3d at 1198.

        a.   Claim 12

In Claim 12, Petitioner alleges that he was denied effective assistance of counsel because trial counsel failed to retain a mental health expert in a timely manner.  Defense counsel described his decision-making process to the court and explained his reasoning for waiting until the eve of trial to hire an expert witness: that counsel believed that Petitioner's psychiatric records indicated that Petitioner "was seriously mentally impaired at all times;" that counsel was hopeful that either the court or prosecutor would agree to resolve the case without a trial and without the expense of an expert report; that counsel realized when the case was assigned for trial that Petitioner's case would be tried to a jury and that an expert witness would be necessary.  RT 689-94.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Although defense counsel delayed in hiring a mental health expert because he misjudged the likelihood of resolving his client's case without a trial, counsel did not fail to consider the available psychiatric information, nor did he fail to arrange a psychiatric examination in time for trial. Cf. Turner, 158 F.3d at 456-57 ("failure to do even the most minimal investigation cannot be viewed as a strategic decision"). Dr. Hyman spent nearly thirty hours preparing his expert report, including testing and interviewing Petitioner at the jail and reviewing police reports, hospital records and family reports. RT 548-50. Trial counsel's tactical decision to delay in hiring a mental health expert falls within the wide range of reasonable professional assistance, in light of counsel's fifteen years of experience in the county Public Defender's office and his awareness of limited funds available to that office. RT 686, 691. See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir.), cert. denied, 469 U.S. 838 (1984) (reasonable tactical decisions do not constitute ineffective assistance even though, in retrospect, strategy was incorrect). See also Rompilla v. Beard, 545 U.S. 374, 383 (2005) ("reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste"). Petitioner therefore is not entitled to relief on Claim 12.

b.   Claim 16

In Claim 16, Petitioner claims that trial counsel was ineffective for failing to call his treating physician, Dr. Marcus, to testify about his history of mental illness. Dr. Marcus treated Petitioner at an out-patient parole clinic in July, 1994. RT 678-79. At trial, defense expert Dr. Hyman testified that he had

reviewed Dr. Marcus's notes recording Petitioner's statements that
he had auditory hallucinations and had delusions of conspiracy
against him by his deceased father, and that Dr. Marcus had the
impression that Petitioner was schizophrenic, paranoid and chronic.
RT 679-80.  Dr. Hyman opined that Petitioner would have nothing to
gain by admitting these facts to Dr. Marcus while on parole because
he risked being sent back to prison by admitting that he was
paranoid and that hearing voices made him violent.  RT 681.  Dr.
Hyman concluded that Dr. Marcus's observations in July, 1994 were
"absolutely consistent" with all of Dr. Hyman's test results, and
that Dr. Marcus's conclusions about Petitioner's mental illness
were consistent with his own conclusions.  RT 681.

Petitioner contends that trial counsel had no rational
tactical purpose for failing to call Dr. Marcus, and that the trial
court commented that defense counsel could have called Dr. Marcus
to testify about his mental illness.  The trial court made that
comment in a different context, and did not suggest that Dr. Marcus
would have been a better witness or should have been called in
addition to Dr. Hyman.  RT 703.

Even if defense counsel acted unreasonably, the failure to
call Dr. Marcus did not prejudice Petitioner at trial.  Because Dr.
Hyman relied in part on Dr. Marcus's July, 1994 report, the jury
was aware of Dr. Marcus's opinion that Petitioner was schizophrenic
and paranoid, as well as Dr. Hyman's opinion that Petitioner
suffered from schizoaffective disorder continuously from about 1988
to the time of trial, with persecutorial delusions, major
depression and suicidal ideation.  RT 556-57, 563, 570.
Furthermore, the jury was able to consider the question of whether

**United States District Court**
For the Northern District of California

13

United States District Court
For the Northern District of California

Petitioner formed the specific intent required to commit robbery: although the prosecutor argued at closing that Dr. Hyman was hired to "suddenly put a new spin on things," defense counsel argued that Dr. Hyman's conclusions and test results were "completely in accordance with every other analysis on the issue of mental illness." RT 763, 771.  Because defense counsel's decision not to call Dr. Marcus does not amount to ineffective assistance and did not prejudice Petitioner, he is not entitled to habeas relief on Claim 16.

c.   Claims 9 and 19

In Claim 19, Petitioner contends that on the day of his arrest, April 1, 1995, he was coerced into signing a written consent to search his residence, and that trial counsel failed to include in the suppression motion evidence of his mental illness at the time of the interrogation.  In Claim 9, Petitioner further alleges that trial counsel was unprepared for the hearing on the motion to suppress.

On November 13, 1996, the trial court heard Petitioner's motions to suppress evidence discovered in searches of his car and house.  The trial court viewed a videotape of Petitioner's statement during his interrogation, and found that Petitioner gave his consent to search his house after the officers discussed their intent to search the house that day.  The trial court found that Petitioner initially did not consent to the search, that the officers indicated that they would obtain a search warrant anyway, that Petitioner expressed concern about the effect of the search on his wife and family and asked the officers for certain considerations when conducting the search, that after further

14

discussion Petitioner asked to speak to an attorney before signing a written consent, that the officers told Petitioner that he did not have a right to an attorney before giving consent to the search, and that after further discussion, Petitioner signed the consent form.  RT 89-90.  The trial court ruled that Petitioner gave "an intelligent waiver of the right to consent" and held that Petitioner's request for an attorney did not invalidate his subsequent consent.  RT 90.

The trial court further held that the search was valid on the ground that Petitioner's wife gave written consent at the house. RT 90.  At the hearing on the suppression motion, Detective Willerford of the City of Antioch testified that he conducted a search of Petitioner's house on April 1, 1995.  RT 54.  Detective Willerford testified that he met Petitioner's wife at the house and informed her that Petitioner had been arrested, that Petitioner had consented to searching the house, and that he formally asked Petitioner's wife for consent to search the house and obtained her written consent.  RT 54-55.

Petitioner's contention that defense counsel was unaware of his mental illness defense, and therefore failed to raise it during the suppression hearing as a basis for challenging his consent to search, is belied by the prosecutor and defense counsel's discussion with the trial court about psychiatric testimony before the court ruled on the motion to suppress.  RT 81-84.  Defense counsel's decision not to argue about Petitioner's mental illness at the suppression hearing was a reasonable one, given that Petitioner's wife had also consented to the search.  Even if defense counsel acted unreasonably, Petitioner was not prejudiced

15

**United States District Court**
For the Northern District of California

because the trial court found that Petitioner's wife consented to the search, as an independent ground for denying the suppression motion.  Habeas relief is therefore denied as to Claim 19.

Petitioner also contends that defense counsel raised an untimely motion to suppress, and was unprepared to argue the motion.  It is clear from the record, however, that the trial court heard argument on the motion and ruled on it, and that Petitioner suffered no prejudice from any untimeliness of the motion. Petitioner is not entitled to relief on Claim 9.

### d.   Claims 1 and 21

In Claim 1, Petitioner claims that trial counsel failed to call two witnesses, Brown and Kelly, who indicated that they were not sure whether Petitioner was the person who robbed the Great Western Bank in Antioch on April 1, 1995.  Petitioner contends that trial counsel's ineffective assistance deprived him of the Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor."  As Petitioner concedes, Ms. Brown did testify at trial and described her failure to identify him.  RT 361.  Ms. Kelly, however, was not called to testify, and Petitioner contends that testimony by a second witness questioning whether Petitioner was the robbery suspect would have substantially weakened the prosecution's case.

Petitioner cites a police report where Officer Garcia, who responded to the scene of the bank robbery, described the robbery suspect based on bank teller Brown's description and his own viewing of the bank's security videotape.  Petition Ex. A.  The report indicates that later that day, another officer located a suspect matching the description outside a motel in Pittsburg.  Id.

16

**United States District Court**
For the Northern District of California

Officer Garcia took Ms. Brown to observe Petitioner for a field show-up but, as Ms. Brown testified, she did not recognize Petitioner as the person who robbed her bank.  RT 361.

Officer Garcia further reported that, after returning Ms. Brown to the bank, he brought another witness, Ms. Kelly, to the motel for a field show-up.  "Wit-Kelly saw Dunn standing next to a patrol car from a distance of approx. 100'ft.  She believed this was not the suspect.  She said the suspect was taller and thinner.  She said the suspect did not have any facial hair, other than the need to shave."  Petition Ex. A.  After seeing the bandanna retrieved from Petitioner's car, however, Ms. Kelly commented that the bandanna looked like the same one worn by the robber.  Id.

Failure to call witnesses constitutes ineffective assistance if the missing testimony would have altered significantly the evidentiary posture of the case such that there is a reasonable probability that the result of the proceeding would have been different.  Brown v. Myers, 137 F.3d 1154, 1158 (9th Cir. 1998).  Ms. Kelly's testimony would not have raised sufficient doubts about Petitioner's identity as the April 1, 1995, robber because there was sufficient evidence of his identity: other eyewitnesses who identified Petitioner at the field show-ups, RT 183-215, 281-329; the bank's surveillance video, RT 304; and items located in Petitioner's car, most notably cash hidden by a plastic cover behind the driver's seat in the amount of $1,650, the exact amount of the bank's loss, which included bait money matching the bank's roster of serial numbers, RT 226-41.  For that reason, trial counsel's decision not to call Ms. Kelly was reasonable and does not sufficiently undermine confidence in the outcome of

Petitioner's trial so as to prejudice his defense at the guilt phase.  <u>Strickland</u>, 466 U.S. at 694.  Petitioner is thus not entitled to habeas relief on Claim 1.

In Claim 21, Petitioner claims that trial counsel failed to call his family members, particularly his wife and mother, to establish Petitioner's mental illness.  The record reflects that the prosecutor agreed not to call Petitioner's wife, Betty Dunn, as a witness.  RT 80.  It was a reasonable tactical decision for defense counsel not to call her and risk adverse questioning by the prosecutor.  As to Petitioner's mother, Lizzie Dunn, Petitioner has not proffered the substance of her testimony, other than suggesting that she would have testified about his life history, mental health and polysubstance abuse.  Defense counsel was able to elicit much evidence of Petitioner's background and mental health history at both the guilt and sanity phases through the testimony of the defense expert, Dr. Hyman, and the various medical records and reports upon which he relied.

Furthermore, Dr. Hyman spoke to Betty Dunn as part of his evaluation of Petitioner's mental health.  RT 549.  Although Dr. Hyman did not speak to Petitioner's mother, the State's expert, Dr. Burnstein, spoke to her and noted in his report her description of Petitioner's state of mind, as defense counsel argued in the sanity phase.  RT 826-27.  Defense counsel thus made a reasonable effort to present Petitioner's mental illness defense without direct testimony by Petitioner's wife or mother.

Further, Petitioner has not demonstrated that either witness was likely to have been available to testify, that she would have given the proffered testimony, or that either witness's testimony

created a reasonable probability that the jury would have reached a more favorable verdict.  Petitioner therefore has not demonstrated prejudice from the failure to call these witnesses.  <u>Alcala v. Woodford</u>, 334 F.3d 862, 872-73 (9th Cir. 2003).  Habeas relief is denied as to Claim 21.

D.  Viewing Petitioner in Handcuffs

In Claim 4, Petitioner alleges that jurors observed him wearing handcuffs, and that trial counsel failed to request an instruction not to draw an adverse inference.  In the absence of a reasoned state court decision on the denial of habeas relief on this claim, an independent review of the record is necessary to determine whether the state court's decision was an unreasonable application of the <u>Strickland</u> standard.  <u>Plascencia</u>, 467 F.3d at 1198.

The record shows that during trial, out of the presence of the jury, defense counsel raised the concern that Petitioner was "paraded in handcuffs" in front of the jury and moved for a mistrial.  RT 345-46.  The trial court found that the jury saw Petitioner in handcuffs while he was transported from one side of the hallway to the courtroom and that the jury did not see him in handcuffs inside the courtroom, and denied the motion for mistrial.  RT 346.  The trial court noted that defense counsel did not request an admonishment.  RT 346.  Later, outside the presence of the jury, defense counsel clarified that he specifically did not request an instruction pursuant to CALJIC No. 1.04 that physical restraints must not be considered for any purpose.  RT 707.  Defense counsel raised the issue again at the sentencing hearing on a motion for new trial, which the trial court denied.  3/3/97 RT 1-5.

United States District Court
For the Northern District of California

1          1.    Applicable Federal Law

2       The Fifth and Fourteenth Amendments prohibit the use of

3   physical restraints visible to the jury during trial absent a trial

4   court determination, in the exercise of its discretion, that

5   restraints are justified by a state interest specific to a

6   particular trial.  Deck v. Missouri, 544 U.S. 622, 627-29 (2005);

7   Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999).  To assess

8   whether the shackles violated a defendant's right to due process,

9   the trial court must analyze the security risks posed by the

10  defendant and consider less restrictive alternatives before

11  permitting a defendant to be restrained.   Rhoden, 172 F.3d at 636.

12      The Supreme Court has not been presented with the question of

13  whether a jury's brief and inadvertent observation of the defendant

14  in handcuffs is inherently prejudicial, but the Ninth Circuit has

15  held that when the jury's observation is brief or inadvertent, the

16  petitioner must demonstrate prejudice.  Id. (citing United States

17  v. Olano, 62 F.3d 1180, 1190 (9th Cir.1995); United States v.

18  Halliburton, 870 F.2d 557, 560-61 (9th Cir.1989); Wilson v.

19  McCarthy, 770 F.2d 1482, 1485-86 (9th Cir.1985)).

20          2.    Analysis

21      Petitioner's restraint while being transported from an

22  elevator to the courtroom was reasonably necessary for public

23  security and escape prevention.  See Deck, 544 U.S. at 629-32.  The

24  single occasion of observing Petitioner in the hallway was not a

25  constant reminder to the jury of Petitioner's accused status.  Cf.

26  Estelle v. Williams, 425 U.S. 501, 504-05 (1976).

27      Furthermore, although the trial court did not instruct the

28  jury concerning the restraints, such instructions are not necessary

as a matter of federal constitutional law.  <u>Wilson</u>, 770 F.2d at 1485 and n.3.  Although the trial court was willing to admonish the jury once the jury had seen Petitioner in handcuffs, the court discussed the matter with counsel and determined that "it was better to not bring further information before the jury or ask them to not consider it."  3/3/97 RT at 5.  Defense counsel's decision not to request an admonition which would draw additional attention to Petitioner's restraints was reasonable and not prejudicial. Habeas relief is therefore denied as to Claim 4.

    E.   Reference to Prior Incarceration

    In Claim 6, Petitioner contends that trial counsel rendered ineffective assistance by eliciting testimony from his expert witness, Dr. Hyman, referring to Petitioner's prior incarceration. Petitioner argues that the trial court ruled that his prior strikes and prison terms would not be mentioned during the guilt phase of trial.  <u>See</u> RT 97.  Borrowing from the plain error standard of direct review, Petitioner argues that trial counsel's error was plain error and caused prejudice because the jury was likely to consider extraneous evidence of his prior incarceration.  Applying the <u>Strickland</u> standard on federal habeas review, the Court finds, upon independent review of the record in the absence of a reasoned state court decision, that trial counsel's performance did not fall below an objective standard of reasonableness, and that the alleged deficiencies did not prejudice Petitioner.

    At the hearing on the motion for new trial, defense counsel raised Petitioner's argument that Dr. Hyman's references to his prior incarceration during the guilt phase denied him a fair trial:

**United States District Court**
For the Northern District of California

> Dr. Hyman made reference to a variety of statements made to him by Mr. Dunn, and reports that he received some of which made reference to the locations of where these – of where certain psychiatric treatment was received and from whom certain opinions were rendered and sometimes the locations of these places were state prison and sources of the information were, for example, a doctor at the parole outpatient clinic.

3/3/97 RT at 3.  Dr. Hyman recognized "some treatment by the Department of Corrections" in 1988 as the earliest of Petitioner's mental health records.  RT 550.  Petitioner has not identified any testimony referring to Petitioner's prior incarceration as a "strike," or referring to the proceedings as a Three Strikes case. Because Petitioner's mental health and intent were at issue during the guilt phase, defense counsel did not act unreasonably by allowing Dr. Hyman to testify about Petitioner's prior mental health treatment and medical records which formed the basis for his opinion that Petitioner suffered schizoaffective disorder, paranoid schizophrenia and major suicidal depression at the time of the robberies.

Even if defense counsel's performance were deficient in failing to prepare the expert witness to avoid any reference to Petitioner's prior incarceration, it is not reasonably probable that, but for counsel's unprofessional errors, the result of the guilt phase of trial would have been different.  As the trial court recognized in denying the motion for new trial, any error in allowing the evidence of Petitioner's prior incarceration was not prejudicial in light of the overwhelming evidence of guilt:

> With regard to evidence of other incarcerations, I feel that is evidence that the defense had a need in the course of evidence that they presented to get certain items before the jury.  They chose to get those items before the jury.

I certainly would have been willing to consider redacting certain items if they were brought to me. I think the defense make [sic] a tactical decision to put this evidence in and not try to recreate an aura in the jury's mind that anything was being kept from them.

Certainly the evidence in this case as it turned out was very strong. You had three separate robberies, they were similar in nature and they should have and could have and were allowed to be presented together so they would not need to be severed from each other.

The third burglary the third robbery, Mr. Dunn, is captured in a place where the robber had fled to. He has certain items that are on him which identify him with that particular robbery and then various identifications are made otherwise.

There is videotapes [sic]. The evidence in summary was very, very, strong on these particular charges. The jury was not limited just to eye witness testimony. They were also able to see various videotapes displayed to them.

So even though, you know, if there are [sic] error in the presenting of the evidence of prior incarceration for purposes of presenting various psychiatric testimony, in viewing this evidence and evaluating the cases that were presented here, it was harmless beyond a reasonable doubt. And certainly that would be what I would suggest regarding the evidence in this particular case.

3/3/97 RT at 7-8.

The state court's denial of habeas relief on Claim 6 was neither contrary to, nor an unreasonable application of, federal law.

F.   Failure to Submit Timeline

In Claim 7, Petitioner claims that defense counsel created and used at trial a timeline of events, but failed to have the chart introduced into evidence, which prevented the jury from considering it during deliberation. Petitioner appears to refer to a timeline that defense counsel used during closing argument in the sanity phase of trial. RT 841, 886.

23

The jury requested defense counsel's timeline during deliberation on the sanity phase, and defense counsel agreed with both the trial court and the prosecutor that his timeline was not in evidence. RT 886. Defense counsel did not act unreasonably or prejudicially by using his timeline only during closing argument and not asking to admit it into evidence. Petitioner therefore is not entitled to relief on Claim 7.

G.    Frivolous Motion

In Claim 22, Petitioner contends that trial counsel filed a frivolous motion to strike two prior convictions that were based on guilty pleas. CT 126. Defense counsel challenged the prior convictions before trial at Petitioner's request. 9/27/96 RT at 3. The Superior Court denied the motion to strike without prejudice. CT 187. Petitioner has not shown how trial counsel's conduct fell below an objective level of reasonableness. Furthermore, Petitioner has not demonstrated any prejudice from the motion to strike being filed. Habeas relief is therefore denied as to Claim 22.

H.    Request for Evidentiary Hearing

Petitioner seeks an evidentiary hearing on his ineffective assistance of counsel claims, particularly on the decision of trial counsel to delay investigating Petitioner's mental condition and hiring a mental health expert. Petitioner's request for an evidentiary hearing is denied.

A district court may not hold an evidentiary hearing on a claim for which the petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme

24

United States District Court
For the Northern District of California

Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  See 28 U.S.C. § 2254(e)(2).

The record of proceedings in state court presents a sufficient factual basis to determine the merits of Petitioner's claims of ineffective assistance of counsel.  Cf. Hendricks v. Vasquez, 974 F.2d 1099, 1109 (9th Cir. 1992) (evidentiary hearing appropriate where it was not possible to determine whether attorney's failure to investigate was strategic).  Petitioner's request for an evidentiary hearing on those claims is therefore denied.

In sum, the state court's denial of habeas relief on Petitioner's ineffective assistance of trial counsel claims was neither contrary to, nor an unreasonable application of, clearly established federal law.  The petition for writ of habeas corpus is therefore denied as to Claims 1, 4, 6, 7, 9, 11, 12, 16, 19, 21 and 22.

II.  Miranda Claim

In Claim 3, Petitioner contends that he invoked his right to counsel during an in-custody interrogation when asked for consent to search his house, and that he was coerced into signing a written consent.  As discussed in the context of Claims 9 and 19, the trial court denied the motion to suppress evidence seized from his house upon finding that Petitioner freely and voluntarily consented to the search, and that his request for an attorney did not invalidate

his subsequent decision to consent.  RT 90.  The trial court also found that Petitioner's wife independently consented to the search. RT 90.

Denying this and other claims for habeas relief, the Superior Court reasoned as follows:

> Contentions raised and rejected on appeal, or which could have been raised by a timely appeal but were not, cannot be renewed in a petition for habeas corpus because habeas corpus cannot serve as a second appeal.  (In re Terry (1971) 4 Cal.3d 911, 927; In re Waltreus (1965) 62 Cal.2d 218, 225.)  For this reason the following claims will be denied: 2, 3, 4, 5, 8, 10, 13, 14, 15, 17, 18, 20, 23, 24, 25, 26, 27, 28, 30, 31 and the constitutional challenge to the three strikes law.
>
> Further, as an adequate and independent ground, the petition will be denied as untimely.  (See In re Clark (1993) 5 Cal.4th 750; In re Robbins (1998) 18 Cal.4th 770.)

May 20, 2003, slip op. at 4.  The Court has conducted "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.  Plascencia, 467 F.3d at 1198.

    A.   Applicable Federal Law

    Under Miranda v. Arizona, 384 U.S. 436, 444 (1966), a person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed.  A suspect who has expressed a desire to have counsel present during custodial interrogation is not subject to further interrogation by the authorities until counsel is made available to him.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  The Supreme Court has not decided whether Miranda requires police to stop asking for consent to search once

26

United States District Court
For the Northern District of California

the defendant invokes his right to an attorney, but the Ninth Circuit has held that "consent to a search is not the type of incriminating statement toward which the fifth amendment is directed." United States v. Lemon, 550 F.2d 467, 472 (9th Cir. 1977). See also United States v. Perez-Lopez, 348 F.3d 839, 846 (9th Cir. 2003) ("Miranda warnings do not in terms address the right to refuse to agree to a search but rather focus on involuntary incriminating statements.").

It is well-settled that a person in custody can give voluntary consent to a search. United States v. Watson, 423 U.S. 411, 424-25 (1976). "(W)hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Voluntary consent to search does not require being advised of a right to refuse consent. Id. at 231. In the Ninth Circuit, however, a court may consider whether such a warning was given, among other factors, when assessing the voluntariness of the consent: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained." United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000), cert. denied, 531 U.S. 1174 (2001).

B.   Analysis

The record supports the trial court's determination after reviewing the videotape of his statement of consent that

27

**United States District Court**
For the Northern District of California

Petitioner's consent to search his house was voluntary.  Although Petitioner was in custody, there is no indication in the record that guns were drawn or that Petitioner was physically threatened. Before giving consent, Petitioner was advised of his right to an attorney during questioning, although he was told that he did not have a right to an attorney before deciding whether to give consent to the search.  Cf. Perez-Lopez, 348 F.3d at 847 ("When a Miranda warning follows rather than precedes the purported consent, it cannot support the voluntariness of the consent.").  Although Petitioner was told that a search warrant could be obtained, there is no indication that this was said in a threatening manner.  Cf. Cormier, 220 F.3d at 1112 ("application of the fifth factor depends on the particular circumstances of the case and thus hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner").

Finally, even if Petitioner involuntarily gave consent to search his home, his consent did not cause any prejudice to Petitioner because his wife independently gave consent to search their house.  Habeas relief is therefore denied as to Claim 3.

III. Fourth Amendment Claims

In Claim 2, Petitioner contends that police did not have probable cause to search his car, and that the items from his car were unlawfully obtained.  In Claim 10, Petitioner alleges that the trial court erred by denying Petitioner's motion to suppress evidence obtained from Petitioner's car and home.  Petitioner's Miranda challenge to the search of his home, raised in Claim 3, is discussed in Section II, above.

United States District Court
For the Northern District of California

The trial court held a hearing on Petitioner's suppression motion, and heard testimony by Officers Willerford and Rezentes regarding the search of the car and house.  RT 25-91.  Petitioner was afforded a full and fair opportunity to litigate the Fourth Amendment claims, barring federal habeas review.  Stone v. Powell, 428 U.S. 465 (1976).

IV.  Prosecutorial Misconduct

Petitioner alleges that prosecutorial misconduct denied him a fair trial in Claims 5 (histrionics), 8 (defacing defense counsel's visual aid), 14 (falsely claiming in closing argument that the defense expert was hired to put a "new spin" on Petitioner's mental illness), 15 (referring to hearsay and evidence protected by psychotherapist-patient privilege), 17 (expressing personal opinion of guilt), 18 (lost trial transcripts), 20 (misstating the evidence regarding Petitioner's auditory hallucinations), 23 (assuming facts not in evidence), and 26 (proffering a tailored jury instruction). In the absence of a reasoned state court decision on the merits of the prosecutorial misconduct claims, the Court has conducted an independent review of the record and determined that the claims do not merit habeas relief for the reasons stated below.  Plascencia, 467 F.3d at 1198.

A.   Applicable Federal Law

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under Darden, the

first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  <u>Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005).

B.   Analysis

1.   Guilt Phase

Petitioner raises several claims of misconduct during the prosecutor's closing argument in the guilt phase.  In Claim 14, Petitioner contends that the prosecutor falsely stated that the defense expert was hired after trial commenced to put a "new spin" on Petitioner's mental state.  RT 771.  Over defense counsel's objection, the trial court allowed this argument.  RT 771.

In closing arguments, prosecutors are allowed reasonably wide latitude.  <u>United States v. Birges</u>, 723 F.2d 666, 671-72 (9th Cir. 1984).  The prosecutor's brief comments were not "so gross as to probably prejudice," <u>id.</u>, and any prejudicial effect was neutralized by the instruction that "[s]tatements made by the attorneys during the trial are not evidence."  RT 716.  The state court's denial of relief on Claim 14 was neither contrary to, nor an unreasonable application of, federal law.

In Claim 15, Petitioner contends that the prosecutor referred to impermissible hearsay evidence during closing argument about Petitioner's mental state by referring to comments by a county jailhouse nurse that were contained in a report by Dr. Meyer, a court-appointed psychologist.  Under cross-examination, Dr. Hyman testified that he had reviewed Dr. Meyer's October 10, 1995, report of his clinical interview of Petitioner, who exhibited confusion, disorientation and regression.  RT 585.  In his report, Dr. Meyer

**United States District Court**
For the Northern District of California

noted that he mentioned Petitioner's behavior to the nurse at the county detention facility, who responded that she was surprised at the report and had never had an incoherent conversation with the Petitioner.  RT 584-85.  During summation, the prosecutor argued that Petitioner's interview with Dr. Meyer evidenced malingering and demonstrated that Petitioner was capable of forming specific intent.  RT 774-75.

Petitioner contends that the prosecutor relied on the hearsay statements of a non-testifying witness in violation of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  Petitioner also contends that the nurse's comments were protected by the psychotherapist-patient privilege.  The prosecutor did not commit misconduct on either ground.  First, Petitioner's defense expert relied on psychological reports and other records of Petitioner's mental health history, including Dr. Meyer's report.  Because the statements in Dr. Meyer's report had been received in evidence, the prosecutor did not commit misconduct in referring to them; nor was the admission of the evidence unreasonable because the nurse's comments were admitted in the context of the defense expert's reliance on Dr. Meyer's report.  <u>See</u> <u>United States v. Sine</u>, 493 F.3d 1021, 1036 (9th Cir. 2007).  Second, "there is no constitutional psychotherapist-patient privilege, only a federal evidentiary one." <u>Henry v. Kernan</u>, 197 F.3d 1021, 1031 (9th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1198 (2000) (citing <u>Jaffee v. Redmond</u>, 518 U.S. 1, 8 (1996)).

Although Petitioner did not allege federal constitutional violations in support of this claim in his state habeas petition and did not exhaust the remedies available in state court, the

1   Court denies relief on the merits of Claim 15.   28 U.S.C. §

2   2254(b)(2).

3        In Claim 17, Petitioner contends that the prosecutor

4   improperly expressed his personal opinion about Petitioner's guilt.

5   Petitioner refers to the following statement during closing

6   argument: "The evidence proved beyond a reasonable doubt that the

7   defendant had the specific intent to keep the property, and I ask

8   you to convict him of those three things, and I find he did have

9   intent.   It's the only true and just verdict in this case."   RT 778

10  (emphasis added).

11       A prosecutor may not express his personal opinion of the

12  defendant's guilt.   See United States v. Younger, 398 F.3d 1179,

13  1190 (9th Cir. 2005) (government's statement of belief that

14  defendant committed crime in summation improper, but harmless,

15  given immediate rephrasing upon defense objection).   In Younger,

16  the Ninth Circuit held that the prosecutor's repeated use of the

17  phrase "we know" to marshal evidence that was actually admitted at

18  trial, and reasonable inferences from that evidence, did not vouch

19  for witness veracity or suggest that evidence not produced would

20  support a witness's statement, and therefore was not improper.   Id.

21  at 1191.   Here, defense counsel did not object to the prosecutor's

22  statement, and it was not rephrased or withdrawn, but it was an

23  isolated remark upon summarizing the evidence and did not infect

24  the trial with unfairness so as to make the conviction a denial of

25  due process.   See Sassounian v. Roe, 230 F.3d 1097, 1106-07 (9th

26  Cir. 2000).   Any prejudicial effect would have been cured by the

27  trial court's instruction that the prosecutor's argument did not

28

United States District Court
For the Northern District of California

constitute evidence.  RT 716.  The state court was not unreasonable in denying habeas relief as to Claim 17.

### 2. Sanity Phase

In Claim 5, Petitioner refers to a juror's note to the trial judge during deliberations in the sanity phase denouncing the prosecutor's conduct as ineffective when resorting to "hollering and histrionics," compared to defense counsel being "calm and rational."  RT 881.  Defense counsel raised this alleged misconduct in the motion for new trial.  3/3/97 RT 2-3.  The trial court denied the motion, ruling that the prosecutor's manner of argument, including yelling and pounding on the table, did not amount to misconduct, and found that the sanction against the prosecutor was the juror's negative reaction.  The trial court further reasoned that "if there was any prejudice to be visited by any side regarding that particular matter, it dealt more with the Prosecution's side that was going to be harmed other than the defense side."  3/3/97 RT 6-7.  Petitioner has not demonstrated that the prosecutor's style of argument was either improper or infected the trial with unfairness.  The state court's denial of relief on Claim 5 was neither contrary to, nor an unreasonable application of, federal law.

In Claim 8, Petitioner claims that during closing argument in the sanity phase, the prosecutor crossed out a portion of a timeline that defense counsel had provided.  Defense counsel objected and the trial court ordered the prosecutor not to deface further the timeline.  RT 841.  Defense counsel raised this alleged misconduct to support the motion for new trial.  3/3/97 RT 6.  Denying the motion, the trial court ruled that the timeline was not

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

evidence, but was something "that attorney's use to help convey their points of view." 3/3/97 RT 6. The trial court further reasoned that the prosecutor was not defacing evidence, but countering defense counsel's argument, and ruled that it was not prosecutorial misconduct to mark up a display which was not in evidence. The jury was not permitted to see the timeline during deliberations and did not consider the prosecutor's markings as evidence. RT 886. Because Petitioner has not demonstrated that the prosecutor's actions rendered his trial fundamentally unfair, habeas relief is denied as to Claim 8.

In Claim 20, Petitioner alleges that the prosecutor misstated the evidence regarding a telephone call between Petitioner and his mother to suggest that Petitioner suffered from auditory hallucinations only after his arrest, and raises other objections to his argument. Dr. Burnstein, who testified for the government in the sanity phase, reported that he interviewed Petitioner's mother, Lizzie Dunn, who stated that in her recent phone conversations with Petitioner, he suffered auditory hallucinations and "talks crazy most of the time." RT 843. Defense counsel objected to the prosecutor's statement during summation that the phone conversation occurred after July 10, 1996, and the prosecutor rephrased his statement to reflect that the interview occurred before that date. RT 842-43. Because the prosecutor's misstatement was immediately corrected, it did not prejudice Petitioner.

Petitioner also challenges the prosecutor's comments characterizing the defense as arguing that the ends justify the means, making adverse inferences from the failure of Petitioner's

United States District Court
For the Northern District of California

family members to testify about his mental health, RT 842, suggesting that even the defense expert did not refute an inference of knowledge or intent from Petitioner's conduct, RT 849-50, and claiming that Petitioner was not legally insane, RT 850-51.  Such statements fell within the wide latitude afforded counsel during argument.  Birges, 723 F.2d at 671-72.  Furthermore, the prejudicial effect of any untoward comments by the prosecutor were cured by the trial court's instruction that counsel's arguments did not constitute evidence.  Darden, 477 U.S. at 182.  Habeas relief is therefore denied as to Claim 20.

In Claim 23, Petitioner contends that the prosecutor assumed facts that were not in evidence by arguing that Petitioner bought a car with money obtained from the bank robberies to demonstrate that Petitioner understood the consequences of his actions.  RT 853. The prosecutor referred to Petitioner's statement to police and the temporary registration for a car purchased in his wife's name.  RT 140-41, 240-41, 526.  The prosecutor argued a reasonable inference that Petitioner understood that he had a car, whether it was registered in his name or his wife's.  RT 853.  Even if the prosecutor's comments were improper, the trial court gave the jury a curative instruction to determine the facts from the evidence received at trial and that statements made by the attorneys were not evidence.  RT 811-12.  Habeas relief is therefore denied as to Claim 23.

In Claim 26, Petitioner contends that the prosecutor improperly requested a tailored jury instruction regarding Dr. Hyman's testimony: "I would simply ask that the jury be informed that the testimony that's being offered by the expert is for the

United States District Court
For the Northern District of California

limited purpose of diagnosing the defendant's mental health or
mental illnesses, and that it's not offered to show or to prove or
to indicate whether or not he had the capacity to form the intent
to permanently deprive the owners of their property in this case."
RT 546-47.  The prosecutor requested this limiting instruction at
the beginning of defense counsel's direct examination of Dr. Hyman.
Defense counsel did not object to such an instruction being given
at the close of evidence, and agreed to "limit Dr. Hyman's
testimony to the existence of mental disorder and defect existing
in Mr. Dunn at the time of these incidents."  RT 547.  The
prosecutor's request was appropriate under state law.  <u>See</u> Cal.
Penal Code §§ 21(b) ("evidence that the accused lacked the capacity
or ability to control his conduct for any reason shall not be
admissible on the issue of whether the accused actually had any
mental state with respect to the commission of any crime"); 25(a)
("evidence concerning an accused person's . . . mental illness,
disease, or defect shall not be admissible to show or negate
capacity to form the particular purpose, intent . . . or other
mental state required for the commission of the crime charged").
Furthermore, it does not appear that the prosecutor's proposed
instruction was given to the jury, negating any prejudicial effect
of the prosecutor's request.  The state court's denial of habeas
relief on Claim 26 was neither contrary to, nor an unreasonable
application of, federal law.

> 3.  Lost Transcripts

In Claim 18, Petitioner alleges prosecutorial misconduct
because the court reporter could not locate her notes of the
November 21, 1996, proceedings.  RT 799.  Respondent clarifies,

United States District Court
For the Northern District of California

however, that the reporter found her notes, which she transcribed in February, 1998, prior to Petitioner's direct appeal in May, 1998.  11/21/96 RT.  Petitioner has not demonstrated that the delay in obtaining this transcript rendered his trial fundamentally unfair or otherwise prejudiced him either at trial or on appeal. Nor does it appear that this was attributable to the prosecutor. Habeas relief is therefore denied on Claim 18.

V.   Trial Court Error

Petitioner alleges trial court error in Claims 13 (failure to instruct on conflicting expert testimony), 24 and 28 (no certification of Petitioner's competence to stand trial), 25 (denial of Marsden motion to substitute counsel), and 27 (failing to establish chain of custody).  In the absence of a reasoned state court decision on the merits of these claims, the Court has conducted an independent review of the record and determined that the claims do not merit habeas relief for the reasons stated below. Plascencia, 467 F.3d at 1198.

A.   Applicable Federal Law

State prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless they can establish that the error resulted in "actual prejudice."  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  A habeas petitioner is not entitled to relief unless the record demonstrates that the trial error "had substantial and injurious effect or influence in determining the jury's verdict."  Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates

federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

B.   Analysis

1.   Failure to Instruct

In Claim 13, Petitioner contends that the trial court failed to give the following instruction on conflicting expert testimony:

> In resolving any conflict that may exist in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another.  In doing this, you should consider the qualifications and believability of each witness, the reasons for each opinion and the facts, and the matter upon which it is based.

CALJIC No. 2.83.

Petitioner has alleged no federal constitutional violation in support of this claim of error in failure to instruct.  Although Petitioner did not exhaust remedies available in state court, the Court denies relief on the merits of the claim.  28 U.S.C. § 2254(b)(2).

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, Petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  Id. at 72.

At the guilt phase of trial, Dr. Hyman was the only expert witness to testify.  Without conflicting expert testimony in the

United States District Court
For the Northern District of California

guilt phase, the trial court did not err by omitting CALJIC No. 2.83. At the sanity phase, however, the jury was presented with conflicting expert testimony: Dr. Hyman opined that Petitioner was incapable of differentiating between right and wrong; Dr. Burnstein testified that Petitioner was legally sane at the time of the robberies, as suggested by his actions in committing the robberies. 11/21/96 RT 52-53, 120-21.

Although Petitioner has demonstrated that CALJIC No. 2.83 would have been permissible at the sanity phase to advise the jury on resolving conflicts in expert testimony, Petitioner has not demonstrated that the absence of the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72. At the beginning of the sanity phase, the trial judge gave several instructions concerning expert testimony that had been given at the guilt phase, including the following:

> A duly qualified expert may give an opinion on questions in controversy at a trial. To assist you in deciding such questions, you may consider the opinion, with the reasons given for it, if any, by the expert who gives the opinion.

> You may also consider the qualifications and credibility of the expert. You are not bound to accept an expert opinion as conclusive but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable.

RT 818.

The trial court also instructed the jury about weighing the testimony of a witness:

> You should give the testimony of a single witness whatever weight you think it deserves[. H]owever, testimony by one witness which you believe concerning any fact is sufficient for the proof of that fact. You

**United States District Court**
For the Northern District of California

should carefully review all the evidence upon which the proof of such fact depends.

RT 817; see CT 290 (CALJIC No. 2.27).  Because Drs. Burnstein and Hyman were the only witnesses to testify during the sanity phase, it is reasonably likely that the jury would have applied this particular instruction, in combination with the instructions specific to expert witnesses, to weigh each expert's testimony.

Considering the absence of CALJIC No. 2.83 in the context of the instructions as a whole and the trial record, the trial court's instructions sufficiently instruct the jury on weighing expert testimony.  The state court's denial of habeas relief on Claim 13 was neither contrary to, nor an unreasonable application of, federal law.

2.   Certification of Competence

In Claim 24, Petitioner contends that at a May 21, 1996, hearing, the trial court reinstated the proceedings without certification of Petitioner's mental competence to stand trial.  As Petitioner acknowledges in Claim 28 and as evidenced in the record, Patton State Hospital did in fact certify his competence.  CT 114 (May 10, 1996 Certification of Mental Competence).  The transcript of the May 21 hearing indicates that defense counsel did not receive a copy of the hospital's report or any formal notification of Petitioner's return from the hospital, but the trial court agreed to provide a copy.  5/21/1996 RT at 2.  Petitioner has not shown that the delay in obtaining a copy of the certification deprived him of a fundamentally fair trial.

In Claim 28, Petitioner contends that he was denied a fair trial by Patton State Hospital's certification that he was

40

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

competent when he had not attended trial competency education
classes.  Under federal law, the test for competence to stand trial
is whether the defendant "'has sufficient present ability to
consult with his lawyer with a reasonable degree of rational
understanding – and whether he has a rational as well as factual
understanding of the proceedings against him.'"  Boag v. Raines,
769 F.2d 1341, 1343 (9th Cir. 1985) (quoting Dusky v. United
States, 362 U.S. 402 (1960) (per curiam)).  The hospital's report
to the trial court indicated that Petitioner was functioning at a
relatively high level, appearing oriented and coherent and giving
clear answers to questions.  CT 116.  The hospital staff noted that
Petitioner "is very knowledgeable about courtroom procedure, as
well as the roles and functions of courtroom officials.  He knows
the four basic pleas and plea bargaining process."  CT 116.  The
evaluating hospital team gave the opinion that Petitioner was
capable of cooperating with his attorney in preparing and
conducting a defense, and recommended that Petitioner continue
taking his prescribed medication.  CT 116.  Petitioner was afforded
a thorough psychiatric evaluation following hospitalization, and
has not demonstrated how lack of classes in trial competency
rendered his trial fundamentally unfair.  See Cacoperdo v.
Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994) (due process requires
trial court to order a psychiatric evaluation or conduct a
competency hearing if the court has a good faith doubt concerning
the defendant's competence).

    Habeas relief is therefore denied as to Claims 24 and 28.

///

3.    Denial of <u>Marsden</u> Motion

In Claim 25, Petitioner contends that he was denied his Sixth Amendment right to counsel by the trial court's denial of his motion for substitution of counsel pursuant to <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970).

A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing.  <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988).  Nor is he entitled to an attorney who likes and feels comfortable with him.  <u>United States v. Schaff</u>, 948 F.2d 501, 505 (9th Cir. 1991).  A defendant does have a Sixth Amendment right to conflict-free representation, although not every conflict between a defendant and counsel implicates the Sixth Amendment.  <u>Daniels v. Woodford</u>, 428 F.3d 1181, 1196 (9th Cir. 2005).  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  <u>Morris v. Slappy</u>, 461 U.S. 1, 14 (1983).

If a state court denies a motion to substitute counsel, the ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated.  <u>Schell v. Witek</u>, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (en banc).  The question is whether the conflict between the petitioner and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that effectively deprived the petitioner of the attorney-client relationship required by the Sixth Amendment.  <u>Id.</u> at 1026.  In the event that the court determines that a serious conflict did exist that resulted in the constructive denial of assistance of counsel, no further showing of prejudice is required; the petitioner's trial

United States District Court
For the Northern District of California

shall be presumed to have been unfair.  Id. at 1027-28 (citing Strickland, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.")).  If the serious conflict did not rise to the level of a constructive denial of counsel, however, the petitioner would have to prove he was prejudiced by the conflict.  Id. at 1028.  To determine, on habeas review, whether the denial of an indigent criminal defendant's motion for substitution of counsel violated his Sixth Amendment right to counsel, the court considers (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.  Id. at 1024-25; Daniels, 428 F.3d at 1197-98.

Although Petitioner claims to have brought four separate Marsden motions, the record only reflects two such motions.  On October 28, 1996, the trial court heard Petitioner on his handwritten Marsden motion, filed October 24, 1996, outside the presence of the prosecutor.  10/28/1996 RT 4-12; CT 179. Petitioner made another Marsden motion on November 12, 1996, the first day of trial.  There is no transcript of that hearing in the record, but the clerk's minutes reflect that the trial court heard argument and denied the motion.  CT 190.  Petitioner asked the Court of Appeal for a writ of prohibition and requested a stay based in part on the trial court's denial of his motion to substitute counsel; the state appellate court denied the petition without opinion on November 25, 1996.  Petition Ex. E.

At the October 28 hearing on the earlier Marsden motion, Petitioner told the trial court that he did not trust his attorney,

43

and did not want the attorney to represent him for several reasons:
defense counsel refused to file an unidentified motion, had only
come to see him twice in nineteen months, "at some point" asked
Petitioner to stop calling his office and hung up on him, and did
not keep him informed of the case.  10/28/1996 RT 5, 8, 10.
Responding to the trial court's questions, defense counsel
clarified that he did file the motion to strike prior convictions
at Petitioner's request, but had forgotten to send him a copy of
the motion.  10/28/1996 RT 6, 9.  Defense counsel further explained
that as a deputy public defender he focused his time on preparing
motions for his clients, rather than visiting them, and had not
refused to discuss the case with Petitioner, although he admitted
that he has told clients to stop calling him because further
conversation would not serve any constructive purpose.  10/28/1996
RT 7-8.  Defense counsel also stated that he had informed
Petitioner throughout the case that the District Attorney's office
refused to offer any deal.  10/28/1996 RT 10.

On denying the <u>Marsden</u> motion, the trial court considered
defense counsel's fifteen years of experience as a deputy public
defender and criminal lawyer.  10/28/1996 RT 7, 11.  The trial
court also considered Petitioner's specific complaints about
defense counsel's representation and determined,

> And he's given in, so to speak, to your request to
> file this motion to strike prior convictions that has
> actually been scheduled and was going to be heard today
> until the motion to continue was made by the District
> Attorney's office.  But as far as motions generally,
> he's the one that makes those decisions; not you. . . .
>
> It sounds like he's been to see you as often as
> necessary, as he has indicated perhaps he should have
> sent you a copy of the motion that was filed today so
> you would have been aware of what motions there were in

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5

the case, and it appears other than that, he has been keeping you apprised of what's going on in this case.

And because the District Attorney hasn't made any offers in this case, and no matter how many times you ask him, that's the only response [defense counsel] is getting at this point - there are no offers being made to you.

6   10/28/1996 RT 11.

7   Applying the first of the three <u>Schell</u> factors, the Court

8   finds that the extent of the conflict between Petitioner and his

9   trial counsel was not so great as to result in a "total lack of

10   communication preventing an adequate defense."   <u>Schell</u>, 218 F.3d at

11   1024-25.   Petitioner complains that his attorney only visited him

12   twice, but this does not account for their meetings at numerous

13   court appearances.   The record reflects that after criminal

14   proceedings were reinstated against Petitioner, defense counsel

15   appeared on his behalf at least seven times between May 21 and

16   November 7, 1996.   CT 118, 120, 122, 125, 157, 187, 189.   Although

17   Petitioner was not satisfied with the level of communication with

18   his attorney, the trial court determined that it was sufficient to

19   keep Petitioner apprised of any developments throughout his case,

20   particularly in light of the District Attorney's refusal to offer a

21   deal.

22   Second, the record reflects that the trial court conducted an

23   appropriate inquiry into the extent of the conflict with defense

24   counsel and considered many of Petitioner's complaints before

25   denying the motion to substitute counsel.   Petitioner also

26   complains that defense counsel's incompetence resulted in twenty

27   months of incarceration and denial of Petitioner's right to a

28   speedy trial.   The record does not reflect the extent to which the

45

**United States District Court**
For the Northern District of California

trial court addressed this complaint, but Petitioner's writ
petition to the Court of Appeal indicates that he raised the speedy
trial issue on November 12, 1996, and the minutes reflect that the
trial court heard and denied a Marsden motion on that date.  CT
190, 418.  Petitioner has not demonstrated that counsel's actions
or incompetence led to the delay in proceedings.  Furthermore, an
independent review of the record reveals that the state court
proceedings concerning Petitioner's competence to stand trial
accounted for much of the delay in bringing the case to trial
following his arraignment on August 3, 1995, including the period
when the proceedings were suspended from November, 1995 to May,
1996.  Following his entry of a plea of not guilty by reason of
insanity in June, 1996, Petitioner waived his right to a speedy
trial to allow time for the trial court to receive medical reports.
6/27/1996 RT 4.  On another occasion, defense counsel requested a
continuance of the trial date to allow time to litigate the
constitutionality of Petitioner's prior convictions and to
accommodate defense counsel's schedule.  9/27/1996 RT 6.  The
record supports the reasonableness of the trial court's denial of
Petitioner's renewed Marsden motion and the sufficiency of its
inquiry into Petitioner's alleged conflict with counsel.

As to the third factor, Petitioner did bring a timely motion
to substitute counsel, as Respondent concedes.  Regardless,
Petitioner's claim fails because he has not demonstrated that his
conflict with his attorney resulted in a total lack of
communication that effectively denied him of his Sixth Amendment
right to counsel.

United States District Court
For the Northern District of California

Petitioner also requests an evidentiary hearing into the trial court's denial of his Marsden motions.  Petitioner has not shown, however, that his allegations, if proved, would entitle him to relief; furthermore, the record indicates that the trial court conducted a full and fair hearing into Petitioner's motion on October 28, 1996, and reliably found relevant facts.  Cf. Schell, 218 F.3d at 1027-28 (finding that no court ever adequately looked into the merits of the petitioner's allegations of conflict with lawyer).  Petitioner's request for an evidentiary hearing is therefore denied.

Petitioner has not demonstrated that the trial court's denial of his Marsden motion prevented effective assistance of counsel.  Habeas relief is therefore denied as to Claim 25.

4.   Chain of Custody

In Claim 27, Petitioner contends that the bank surveillance videotapes were admitted without proper authentication, and that no chain of custody was established for them.  Petitioner has alleged no federal constitutional violation in support of this claim of error, and has not exhausted the remedies available to him in state court.  Nevertheless, the Court denies relief on the merits of the claim.  28 U.S.C. § 2254(b)(2).

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  See Henry, 197 F.3d at 1031.  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  Id.

United States District Court
For the Northern District of California

The trial court admitted the surveillance video of the March 15, 1995, Citibank robbery and the April 1, 1995 Great Western Bank robbery.  RT 528-30.  The trial court heard argument on defense counsel's request for a hearing to establish the authenticity and chain of custody as to the videotapes.  The prosecutor indicated that he was not required to establish chain of custody as to the videotapes, but would establish their authenticity through witness testimony.  RT 72.  After the prosecutor proffered foundational questions that he would ask of the witnesses who could testify as to what was shown on the videotapes, defense counsel stipulated to the questioning to authenticate the tapes.  RT 71-74.  The trial court also indicated that it was assured of the reliability of the videotapes, subject to witness testimony to establish the accuracy of what was depicted on the videotape.  RT 74.

Petitioner has not alleged any defect in the chain of custody so as to cast doubt upon the reliability of the videotape evidence and to render his trial fundamentally unfair, and has not otherwise demonstrated how failure to establish a chain of custody violated fundamental due process and the right to a fair trial.  The state court's denial of habeas relief on Claim 27 was neither contrary to, nor an unreasonable application of, federal law.

VI.  Sentence Enhancements

    A.   Three Strikes Law

In his unenumerated claims, Petitioner contends that his sentence was enhanced by his prior convictions pre-dating the enactment of California's "Three Strikes" law in violation of the Ex Post Facto clause.  Petition 17.

48

United States District Court
For the Northern District of California

The United States Constitution prohibits the States from passing any "ex post facto Law." U.S. Const., Art. I, § 10, cl. 1. The Ninth Circuit has held that application of a sentencing enhancement due to a prior conviction is not a violation of the Ex Post Facto clause, as long as the statute was in effect before the triggering offense was committed. Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on other grounds, 538 U.S. 901 (2003). The "Three Strikes" recidivist statute took effect on March 7, 1994, and was amended by an initiative measure in November, 1994. Cal. Penal Code §§ 667(b)-(i), 1170.12. See People v. Castello, 65 Cal. App. 4th 1242, 1251 (1998). Because Petitioner committed the triggering robberies on March 13, March 15 and April 1, 1995, after the Three Strikes law went into effect, Petitioner's sentence enhancement did not violate the Ex Post Facto clause.

Petitioner further argues that he was denied due process because the sentencing laws at the time of his prior offenses created a liberty interest in not being at greater risk of imprisonment than originally specified. Petition at 20-21. The Three Strikes law was used to affect the sentence for the 1995 robberies, not for Petitioner's prior convictions. Because there was no change in the Three Strikes law between the time Petitioner committed the triggering robberies and the time he was convicted of them, Petitioner was not denied a liberty interest in violation of his right to due process.

B.   Plea Agreements Underlying the Prior Convictions

Petitioner also claims that the use of his prior convictions to enhance his current sentence violated his prior plea agreements.

49

United States District Court
For the Northern District of California

<u>See</u> Petition 23; 3/4/85 and 11/16/88 RT, reflecting entry of plea, filed in support of motion to strike prior convictions.  Petitioner contends that he should have been informed at the time of entering the earlier guilty pleas that the State could change the terms of his sentence.  Although a defendant is entitled to be informed of the direct consequences of the plea, the court need not advise him of "all possible collateral consequences."  <u>Torrey v. Estelle</u>, 842 F.2d 234, 235 (9th Cir. 1988).  The sentence enhancement was a collateral consequence of the prior pleas; it was not a direct consequence, with "definite, immediate and largely automatic effect on the range of the defendant's punishment."  <u>Id.</u>

The state court's denial of habeas relief on Petitioner's challenges to the sentence enhancement was neither contrary to, nor an unreasonable application of, federal law.

VII. Cumulative Impact of Errors

In Claim 31, Petitioner asks the Court to consider the cumulative prejudicial impact of all the errors in this case.  In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may have "a substantial and injurious effect" on the verdict.  <u>Alcala</u>, 334 F.3d at 893-95 (citing <u>Calderon v. Coleman</u>, 525 U.S. 141, 145 (1998)).  The Court finds no constitutional error at trial, and therefore no cumulative prejudicial effect on the outcome of the trial.  Habeas relief is denied as to Claim 31.

VIII. Ineffective Assistance of Appellate Counsel

Petitioner alleges ineffective assistance of appellate counsel in Claims 29 (failure to raise claims on direct appeal) and 30 (failing to provide Petitioner with transcripts).  On denying

**United States District Court**
For the Northern District of California

habeas relief on Petitioner's claims of ineffective assistance of appellate counsel, the Superior Court concluded as follows:

> As to the IAC claims against his appellate attorney, claim 29 fails in that petitioner's vague and conclusionary allegations will not support writ relief. (See <u>In re Swain</u> (1949) 34 Cal.2d 300, 303-04.)  IAC claim 30 fails because petitioner has not shown prejudice.

May 20, 2003, slip op. at 4.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the <u>Strickland</u> standard.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

In Claim 29, Petitioner contends that appellate counsel failed to raise crucial assignments of error that Petitioner presented in his habeas petition.  Each of those claims has been considered and denied in Sections I through VII above.  Because none of these claims had a reasonable probability of succeeding, Petitioner cannot satisfy either <u>Strickland</u> prong: appellate counsel was not ineffective for raising the issues, and Petitioner has not demonstrated that but for appellate counsel's unprofessional errors, Petitioner would have prevailed on appeal.  <u>Miller</u>, 882 F.2d at 1434.

In Claim 30, Petitioner argues that appellate counsel failed to provide him with all trial transcripts after denial of his appeal and petition for review.  Once Petitioner's appeal was final, his lack of access to the trial transcripts did not

prejudice him on appeal.  The state court's denial of relief on Claims 29 and 30 was neither contrary to, nor an unreasonable application of, clearly established federal law.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus (docket #1) is DENIED with prejudice.  Judgment shall enter accordingly and each party shall bear his or her own costs.  The Clerk shall close the file.

IT IS SO ORDERED.

Dated: 4/10/08

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DUNN,

        Plaintiff,

  v.

PLILER et al,

        Defendant.

_____/

Case Number: CV04-05479 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 10, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Glenn  Dunn K44394
Pelican Bay State Prison
5905 Lake Earl Drive
P.O. Box 7500
B3-103
Crescent City,  CA 95532

Dated: April 10, 2008

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California